UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PATRICIA HINOJOSA | § | |
| v. | § | CIVIL ACTION NO.<br>SA-10-CA-0993 H |
| PEARSALL INDEPENDENT SCHOOL DISTRICT | § | |

PLAINTIFF'S CORRECTED RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND ATTACHED APPENDIX

Plaintiff, Patricia Hinojosa, submits this, her Response to Defendant's Motion for Summary Judgment and Appendix, and shows as follows:

*Law*

1. The Texas Commission on Human Rights Act prohibits discrimination based on disability. See Tex.Lab.C. 21.051. The term "disability" shall be construed broadly in favor of coverage. Tex.Lab.C. 21.0021(1). The term "disability" shall include impairments which are in remission or which are episodic. Tex.Lab.C. 21.0021(2). One of the TCHRA's purposes is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." Tex. Lab.C. § 21.001(1). Therefore, analogous federal statutes and the cases interpreting them guide the reading of the TCHRA. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex.2001); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex.1999).

2. The standards for review of a summary judgment are well established: (1) the movant has the burden of showing that there is no fact issue or legal issue for resolution by the trier of fact, and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed fact issue precluding summary judgment, evidence provided by the non-movant will be taken as true; (3) the non-movant is entitled to have all reasonable inferences made and all doubts resolved in his favor. *Nixon v. Mr. Property Management Corp.*, 690 S.W. 2d 546 (Tex. 1987); *Western Investments, Inc. v. Urena*, 162 S.W. 3d 547, 550 (Tex. 2005); *Fontenot v. Upjohn Co.*, 780 F. 2d 1190 (5th Cir. 1986); *Chaplin v. Nations Credit Corp.*, 307 F. 3d 368, 372 (5th Cir. 2002).

3. A Defendant who moves for summary judgment has the burden of showing that as a matter of law no material issue of fact exists for the Plaintiffs' cause of action. *Arnold v. National County Mutual Fire Ins. Co.*, 725 S.W. 2d 165 (Tex. 1987). This may be accomplished by evidence showing that at least one necessary element of Plaintiffs' cause of action has been conclusively established against the Plaintiff. *Gibbs v. General Motors Corp.*, 450 S.W. 2d 827 (Tex. 1970); *Celotex Corp. v. Catrett*, 477 US 317, 322, 106 S.Ct. 2548, 2552 (1986); *Brennan v. Mercedes Benz USA*, 388 F. 3d 133, 135 (5th Cir. 2004).

4. The trial court must assume all the non-movant's proof is true. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d at 901, 911 (Tex. 1997); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 491 (Tex. 1996); *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995); *Nixon v. Mr. Property Mgmt Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The trial court must indulge every reasonable inference in favor of the non-movant. *Science Spectrum*, 941 S.W. 2d at 911; *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996); *Nixon*, 690 S.W.2d at 549.

*Facts*

See Plaintiff's Appendix containing her Fact Summary.

*Argument*

1. The burden shifting analysis does not apply to this case.

The burden-shifting test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), does not apply. This is the analysis used by the Defendant in its motion. See MSJ, p. 3. As virtually every circuit to consider the question has held, *McDonnell Douglas* does not apply to ADA cases involving a failure to accommodate. *See, e.g., Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007); *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1188–1189 (10th Cir. 2003); *Fenney v. Dakota, Minnesota & Eastern R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999); *Walton v. Mental Health Ass'n of Southeastern Pennsylvania*, 168 F.3d 661, 670 (3d Cir. 1999); *Aka v. Washington Hosp. Center*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); *Williams v. Channel Master Satellite Systems, Inc.*, 101 F.3d 346, 348 n.1 (4th Cir. 1996), *cert. denied sub nom*

*Williams v. Avnet, Inc.*, 520 U.S. 1240 (1997); *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1283–1284 (7th Cir. 1996); *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1180 (6th Cir. 1996).

The reason for rejecting the burden-shifting analysis in accommodation cases is logical. The *McDonnell Douglas* analysis was created to deal with the usual Title VII "pretext" case, in which the defendant denies taking the protected classification (e.g., race or gender) into account in its decision-making, and therefore no direct evidence of discrimination exists. *Compare Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255 n.8 (1981) ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination."). By contrast, in cases involving the failure to accommodate, as in this one, the defendant is not really disputing that it took action based on disability.

The failure to accommodate is instead a direct violation of the law. *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1283 (7th Cir. 1996). Thus, there is no need to show pretext, and intent is generally not at issue. *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004); *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003); *Fontanilla v. City and County of San Fransisco*, 2001 WL 513395, at *13 (N.D. Cal. Feb. 28, 2001). *See also Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454–455 (5th Cir. 2005) (ADA Title II case) ("[B]oth the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals. Where a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant.").

In *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758 (5th Cir. 1996), the court held that the district court had "improperly analyzed this case" because it was "not a circumstantial evidence case, where we apply the *McDonnell Douglas* burden shifting framework; rather, this is a direct evidence case." The court found:

> In the instant case there is direct evidence that [the employer] made an employment decision because of a disability. [The employer] does not deny that [the plaintiff] was removed from driving duties because of her hearing impairment. Therefore, we need not engage in the *McDonnell*

3

>  *Douglas* presumptions in order to infer discrimination: [the employer] admits that it discriminated ... [but] contends that it had a reason to discriminate [here, that the plaintiff posed a direct threat].

*Id.* at 762. The Southern District of Texas has also recognized that under analogous facts—i.e., where the employer did not dispute adverse action but argued that plaintiff was not "qualified" under the ADA and that the accommodations sought would result in a fundamental alteration—such as failure-to-accommodate claims are properly analyzed as "direct evidence" cases rather than under *McDonnell Douglas* burden-shifting. *E.E.O.C. v. Houston Area Sheet Metal Joint Apprenticeship Committee*, 2002 WL 1263893, at *6 and n.2 (S.D. Tex. May 31, 2002).

By definition, the plaintiff in an accommodation case is *seeking* to be treated differently, as the law mandates. As the Supreme Court recognized in *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), the ADA specifies that

> preferences will sometimes prove necessary to achieve the Act's basic equal opportunity goal. The Act requires preferences in the form of "reasonable accommodations" that are needed for those with disabilities to obtain the same workplace opportunities that those without disabilities automatically enjoy. By definition any special "accommodation" requires the employer to treat an employee with a disability differently, i.e., preferentially. And the fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach.

The Fifth Circuit has recognized the same thing:

> The ADA mandate that employers must accommodate sets it apart from most other anti-discrimination legislation. Race discrimination statutes mandate equality of treatment, in most cases prohibiting consideration of race in any employment decision. In contrast, an employer who treats a disabled employee the same as a non-disabled employee may violate the ADA. By requiring reasonable accommodation, the ADA shifts away from similar treatment to different treatment of the disabled by accommodating their disabilities.

*Riel v. Electronic Data Systems Corp.*, 99 F.3d 678, 681 (5th Cir. 1996). Thus, any prima facie model that requires proof of differing treatment is inapposite in the ADA failure-to-accommodate context.

4

Rather than attempting to force the "square peg" of an accommodation claim into the "round whole" of the *McDonnell Douglas* disparate treatment model, the court should simply focus on the actual elements of an ADA claim of failure to accommodate. Those elements are that the plaintiff 1) has a disability; 2) was qualified for the position; and 3) was discriminated against because of his disability. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007); *LeBlanc v. Lamar State College*, 232 S.W.3d 294, 299 (Tex. App.–Beaumont 2007), no writ. Discrimination includes failing to provide a reasonable accommodation. 42 U.S.C. § 12112(b)(5)(A); *Riel v. Electronic Data Systems Corp.*, 99 F.3d 678, 681 (5th Cir. 1996); *LeBlanc, supra*, 232 S.W.3d at 299, *citing* Tex. Lab. Code § 21.128(a).

The Fifth Circuit's Pattern Jury Charge § 11.7.2(B)(4) sets out the details. To prove a failure-to-accommodate claim under the ADA, the plaintiff must prove:

    a. Plaintiff had a disability;
    b. Plaintiff was qualified for the job;
    c. Defendant knew of Plaintiff's disability;
    d. Plaintiff requested an accommodation;
    e. A reasonable accommodation existed that would have allowed Plaintiff to perform the essential functions of the job; and
    f. Defendant failed to provide a reasonable accommodation.

Numerous cases in this Circuit use those, or substantially similar, elements. *See, e.g., Cato v. First Federal Community Bank*, ___ F. Supp. 2d ___, 2009 WL 3733358, at *11 (E.D. Tex. Nov. 5, 2009) ("To assert a claim under the ADA's accommodation provisions, Plaintiff must show: (1) she requested a reasonable accommodation; and (2) that she was a qualified individual with a disability at the time the request for accommodation was made. ... Once such a request is made, the employer is required to engage in an "interactive process: a meaningful dialogue with the employee to find the best means of accommodating that disability. ... When an employer does not engage in a good faith interactive process, that employer violates the ADA-including when the employer discharges the employee instead of considering the requested accommodations.") (internal quotes omitted); *Gary v. Combined Group Ins. Services, Inc.*, 2009 WL 2868485, at *12 (N.D. Tex. Sept. 4, 2009) ("To establish a claim for

5

failure to accommodate, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability. As to the third element, the ADA requires that the employer and employee engage in an interactive process to determine a reasonable accommodation.") (cite and internal quotes omitted); *Hartup v. American Standard, Inc.*, 2009 WL 2776386, at *12 (N.D. Tex. Aug. 31, 2009) (plaintiff "must prove that: (1) He had a disability; (2) he was qualified for the job; (3) Defendant knew of his disability; (4) [the plaintiff] requested an accommodation; (5) a reasonable accommodation existed that would have allowed him to perform the essential functions of the job; and (6) Defendant failed to provide a reasonable accommodation."); *Fields v. St. Bernard Parish School Bd.*, 2000 WL 335744, at *5 (E.D. La. 3/30/2000) (elements are "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.").

The law in other circuits is likewise similar. *See, e.g., Ekstrand v. School Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009); *Enica v. Principi*, 544 F.3d 328, 338 (1st Cir. 2008); *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006); *Armstrong v. Burdette Tomlin Memorial Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006); *Bartee v. Michelin North America, Inc.*, 374 F.3d 906, 912 n.4 (10th Cir. 2004); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001), *cert. denied*, 535 U.S. 933 (2002); *Penny v. United Parcel Service*, 128 F.3d 408, 414 (6th Cir. 1997); *Nighswander v. Henderson*, 172 F. Supp. 2d 951, 962–963 (N.D. Ohio 2001); Ninth Circuit Model Civil Jury Instructions, § 12.8 (ADA—Reasonable Accommodation), linked online at http://207.41.19.15/web/sdocuments.nsf/civ.

The Supreme Court set out the proper burdens of proof in accommodation cases in *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). According to the Court, to defeat an employer's motion for summary judgment, the plaintiff "need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases. Once the plaintiff has made this showing, the []employer then must show special

(typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* at 401–402 (citations omitted). *See also Riel v. Electronic Data Systems Corp.*, 99 F.3d 678, 682–683 (5th Cir. 1996); *Prewitt v. US Postal Service, supra*, 662 F.2d 292, 308 (In a Rehabilitation Act case, the Fifth Circuit explained that "the burden of proving inability to accommodate is upon the employer . . . . The employer has greater knowledge of the job than does the handicapped applicant. The employer can look to its own experience, or, if that is not helpful, to that of other employers who have provided jobs to individuals with handicaps similar to those of the applicant in question. Furthermore, the employer may be able to obtain advice concerning possible accommodations from private and government sources.").

The proper analysis in this case is seen by reference to factually similar cases like *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247 (11th Cir. 2007). In *Holly*, the employer stopped accommodating the plaintiff's frequent disability-related tardiness pursuant to its "no-fault" punctuality policy. The district court granted summary judgment to the employer on grounds similar to those urged by the Defendant in the instant case, finding that strict punctuality was an "essential function" of the plaintiff's job, and that the plaintiff was not the victim of unlawful discrimination because there was no evidence that the employer had treated him differently from similarly-situated non-disabled employees. The appellate court reversed, observing that:

> an employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the ADA, so long as that individual is "otherwise qualified," and unless the employer can show undue hardship. There is no additional burden on [plaintiff] to show that [the employer] enforced its punctuality policy in a discriminatory manner by granting leniency under the policy to [plaintiff's] non-disabled co-workers while denying [plaintiff] the same leniency, nor any subsequent burdens on [the employer] to show that it had "any legitimate non-discriminatory reasons for terminating [plaintiff]" or on [the plaintiff] to "establish that these reasons were pretextual."

Thus, Defendant's reliance here on the *McDonnell Douglas* burden-shifting formula simply misses the point. Rather, as in *Holly*, Ms. Hinojosa does not dispute that she was absent on occasion, but argues instead that daily attendance is not an essential

7

function of her particular job. As the Eleventh Circuit held in *Holly*, and as shown below at pp. 74–78, there is a fact issue as to whether such strict attendance is an essential function in this case, and summary judgment should be denied.

### 2. Defendant wholly fails to indulge reasonable inferences in favor of the non-movant.

The Defendant, Pearsall ISD completely fails to indulge available inferences in favor of the non-movant. *See Science Spectrum*, 941 S.W. 2d at 911; *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996); *Nixon*, 690 S.W.2d at 549. Perhaps, the most significant failure to construe facts in favor of the non-movant concerns Defendant's assertion that it "accommodated" Plaintiff. See Def's Fact Summary, p. 2. The Defendant claims it "accommodated" Plaintiff's need to be absent from work. See Def's MSJ, p. 3. Victor Vinton, the Assistant Superintendent for Human Resources testified that the district provided "accommodations" for Plaintiff. Yet, Defendant claims Plaintiff did not have a disability. Def's MSJ, p. 4. The Defendant claims Plaintiff was released back to work with no restriction. Def's MSJ, p. 4. But, that is simply not true. Her last Texas Worker's Compensation Status Report dated Sept. 12, 2009 says she was released back to work with the restriction that she could not lift more than ten pounds.

If Plaintiff did not have a disability, why did it provide her with "accommodations"? Mr. Vinton was confused about whether he believed Plaintiff had a serious health condition. He stated he did not believe she had such a condition, stated that he thought she was "cured" and later, that she did have a serious health condition. See Pl's Fact Summary, para. 10. Defendant's ambiguity points to a fact issue.

Defendant claims Plaintiff was released back to work on Nov. 9, 2009 with no restrictions. Def's MSJ, p. 4. This particular TWC Status Repot (Def's Ex. B-6), however, pertained to an incident of "minor electrocution." It is not relevant to her back injury and does not refer in any way to her back injury. Defendant fails to construe the evidence in favor of the non-movant.

### 3. Plaintiff is a qualified individual with a disability.

Defendant does not deny that Plaintiff injured her back when her chair collapsed in March, 2009. She sustained an annular tear in her disc. Her injury prevents her from

8

painting, one of her former hobbies. She cannot sit or stand for long periods of time. She cannot stand the long periods necessary for sketching. She cannot pursue her former hobby taking pictures. She cannot crouch down for those "amazing angles." She needs help carrying groceries. The work restrictions still pertain. The pain in her back can be so bad that she cannot drive. She needs help going to the bathroom on occasion. She needs help getting out of bed.

Her injury affects several major life activities: toileting, *Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144, 151 (2d Cir. 1999); getting into or out of bed, *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 485 (1999) (The studies relied on by the Court in *Sutton* in determining who is a person with a disability suggest that this is a major life activity.); buying groceries, *Bear v. Exxon Mobil Corp.*, 2004 WL 2603727 (E.D. La. 2004); driving, *Weiss-Clark v. Kaiser Foundation Health Plan of the Northwest*, 2001 WL 204823, at *4 (D.Or. Feb. 7, 2001); *United States v. City & County of Denver*, 49 F.Supp.2d 1233 (D.Colo), *aff'd on other grounds sub nom Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999); *Norris v. Allied-Sysco Food Servs.*, 948 F.Supp. 1418, 1434 n.13 (N.D.Cal. 1996) ("The jury also could have concluded that Norris's back injury substantially limited her ability to drive, and the jury could have reasonably felt that, at least in California, driving is a major life activity."), *aff'd on other grnds*, 191 F.3d 1043 (9th Cir. 1999), *cert. denied*, 528 U.S. 1182 (2000). *Contra: Chenoweth v. Hillsborough County*, 250 F.3d 1328 (11th Cir. 2001), and authorities cited.

Defendant claims Plaintiff was released with no restrictions in November, 2009. But, that release pertained to an electrocution incident and did not refer to her back injury. Construing the evidence in favor of the non-movant, Plaintiff was actually released back to work in September, 2009 with a carrying restriction. Defendant overlooks the evidence indicating that Victor Vinton and Kathryn Oliver were aware of Plaintiff's ongoing treatment and impairment. Defendant overlooks the various job accommodations provided to Plaintiff.

The federal ADA Amendments Act went into effect January 1, 2009. The new act provides that caring for oneself is a major life activity, as is bending, lifting, and

operation of a major bodily activity. See 42 U.S.C. § 12102(2). A disability which is episodic should be viewed in its active state. 42 U.S.C. § 12102(4)(d). Tex.Lab.C. § 21.002 contains the same language and was effective Sept 1, 2009.

### 4. Attendance is not an essential element of every job

Defendant claims attendance is an essential element for any job. Def's MSJ, p. 4. But, elements of the job are themselves a fact inquiry. The assessment of whether a function is essential is a fact-intensive one. As the Fifth Circuit recognized in *Barber v. Nabors Drilling U.S.A., Inc.* 130 F. 3d 702, 707 (5th Cir. 1997):

> First, we cannot say, on the facts of this case, that any or all of the above listed ... duties as a matter of law are essential functions .... If we venture to second-guess then we simply usurp the most critical function of the jury in ADA cases, i.e., the injection of some indispensable common sense in the determination of what is or is not an essential function. When a statutory scheme such as the ADA necessitates some seemingly arbitrary line-drawing exercise, courts of law do well to refer the question to the jury, and consequently the appellate court must respect the jury's call, unless it is unsupportable by the evidence.[1]

*See also Riel, supra,* 99 F.3d at 682–683 (finding question of fact); *Rohr v. Salt River Project Agricultural Imp. and Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009); *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1258 (11th Cir. 2007) (whether a function is essential is evaluated on a case-by-case basis by examining a number of factors). Defendant can only prevail under the above analysis by showing that strict punctuality, working a fixed or rigid schedule, and performing all job duties at 318 Berry Ranch Road, Pearsall, Texas, are all essential job functions. None of those meets any of the three regulatory examples of essential job functions in 29 CFR § 1630.2(n)(3). Nor do the regulatory factors in § 1630.2(n)(2) indicate any of them are essential. With regard to strict punctuality or a rigid schedule, the Defendant has no set policy as to scheduled hours, and it allows numerous other employees to have a flexible schedule. Coaches are allowed to miss many days. As Ms. Oliver explained, in her view, it is a "personal

10

---

[1] *Barber* is a Rehabilitation Act case. Congress has mandated that the Rehabilitation Act and the ADA be read consistently, 42 U.S.C. § 12117(b), and that the ADA not be interpreted to provide lesser protection than does the Rehabilitation Act. 42 U.S.C. § 12201(a). *See also Daugherty v. City of El Paso,* 56 F.3d 695, 697–698 (5th Cir. 1995) (applying Rehabilitation Act precedent in ADA cases).

decision" for a teacher to be absent. In her view, coaches are required to be absent for school activities. But, § 1630(n)(3) does not include such a distinction.

Neither the Defendant's PDAS Self-Report Form, nor the Defendant's job summary at Ex. F, indicate any prescribed work schedule for Ms. Hinojosa's position. See Ex. F, Excerpts from Plaintiff's Personnel file. On the contrary, her list of "Responsibilities," which she was required to sign and adhere to, stated that she could be absent without permission if the absence was for an "illness" (No. 14 in her list of required Responsibilities). The District does not deny that she continued to suffer from her back injury in January, 2010 when she was issued her termination warning. Ms. Oliver admitted in her deposition that she realized Ms. Hinojosa was still undergoing physical therapy when she issued her the Jan. 8, 2010 memo. The Principal was in effect disciplining the math teacher for absences which the Responsibilities Agreement countenanced.

The fact that a function alleged by the employer to be essential does not appear in the job description suggests a fact issue. *See, e.g., Giles v. General Elec. Co.*, 245 F.3d 474, 486 (5th Cir. 2001); *E.E.O.C. v. E.I. DuPont de Nemours*, 347 F. Supp. 2d 284, 296 (E.D. La. 2004), *aff'd in relevant part*, 480 F.3d 724, 730–731 (5th Cir. 2007); *Vaughn v. Federal Exp. Corp.*, 1997 WL 625495, at 83 (E.D. La. Oct. 7, 1997).

Defendant's position is simply to cite opinions that have characterized *attendance* as an essential job function of most jobs. *See, e.g., Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996). The Fifth Circuit has never held that attendance is *always* an essential job function. This makes sense given that accommodations include reasonable periods of leave. 29 C.F.R. § 1630 App., § 1630.2(o); *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 647 (1st Cir. 2000) (trial court's statement about attendance being an essential function of any job suggests "per se rules" rather than the required "individual assessment of the facts that the [ADA] and the case law requires."). *Rogers*, for example, was about the plaintiff's inability to work *at all*. Other cases such as *Hypes v. First Commerce Corp.*, 134 F.3d 721, 726-727 (5th Cir. 1998) actually reflect a detailed analysis, an approach rejected by the Defendant in the instant case.

Defendant's view is also contrary to other case law, and to EEOC guidance. See

11

EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, Question 22 and n. 65 (Oct. 2002, Revised), http://www.eeoc.gov/policy/docs/accommodation.html (attendance "is not an essential function as defined by the ADA because it is not one of the fundamental job duties of the employment position. As the regulations make clear, essential functions are duties to be performed.") (internal citations and quotations omitted). The EEOC guidance is the more logical position in that most such cases actually turn, not on what job duties are essential, but on the accommodation issue. That is, in cases like *Rogers*, the court was not really determining which functions were essential so much as it was finding that indefinite leave was either an unreasonable accommodation, or perhaps more appropriately, would have imposed an undue hardship

This case is more about strict punctuality or rigid work schedules, not attendance. *See, e.g., Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247 (11th Cir. 2007) (making distinction between attendance and punctuality). Many cases find a fact issue on such matters. *See, e.g., Holly v. Clairson Indust., L.L.C.*, 492 F.3d 1247, 1257–1260 (11th Cir. 2007) (fact issue whether strict punctuality was an essential job function because of the nature of the job, the lack of hard evidence, and the fact that the employer had previously accommodated instances of tardiness); *Ward v. Massachusetts Health Research Institute, Inc.*, 209 F.3d 29, 35 (1st Cir. 2000) ("We find nothing in the record to support the appellee's position that a set schedule is an essential requirement for Ward's job ... [or] any evidence that the nature of Ward's position requires that he be present during specific hours of the day. In fact, the record suggests otherwise."); *Carlson v. Inacom Corp.*, 885 F. Supp. 1314, 1320 (D. Neb. 1995) (levels of attendance and regularity is a fact-specific issue dependent upon the job); *Breen v. Dept. of Transp.*, 282 F.3d 839, 842–843 (D.C. Cir. 2002) (fact dispute regarding whether daily attendance was required, and thus whether it would preclude alternative work schedule providing biweekly day off).

Defendant's citation to *Grubb v. Southwest Airlines*, an unpublished case, is misplaced. By the Fifth Circuit's own rules, it has no precedential value. *Grubb* concerned an employee who fell asleep frequently and who failed to provide his

12

employer with a medical diagnosis. The employee was a flight instructor. He fell sleep during meetings and during flights. Again, as in *Rogers*, the issue in that case was whether the employee would *ever* be able to perform the essential functions of the job. Here, Ms. Hinojosa could perform the essential functions of her job. Her May 6, 2010 performance evaluation affirmed she could perform the essential functions of the job. The issue here is about adherence to a rigid time schedule and whether that is a genuine requirement for her position.

Some courts have characterized regular attendance as an essential job function. *See, e.g., Rios-Jimenez v. Principi*, 520 F.3d 31, 42 (1st Cir. 2008) ("At the risk of stating the obvious, attendance is an essential function of any job."); *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (ability to appear for work and to complete tasks reasonably timely is an essential function), citing *Tyndall v. Nat'l Education Centers*, 31 F.3d 209 (4th Cir. 1994) (a regular attendance level is a required element of most jobs). *Cf. Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305–1306 (11th Cir. 2000) (mandatory overtime is akin to job presence, which has been held to be essential function).

But, there are logical inconsistencies with the statement. It is facially inconsistent with providing leave as an accommodation, which is established law. The Supreme Court has recognized that that accommodations may include breaks for medical treatment, *US Airways, Inc. v. Barnett*, 535 U.S. 391, 397–398 (2002), and every circuit to consider the issue recognizes that leave can be a reasonable accommodation. *See, e.g., Criado v. IBM Corp.*, 145 F.3d 437, 443 (1st Cir.1998); *Walton v. Mental Health Ass'n. of Southeastern Pennsylvania*, 168 F.3d 661, 671 (3d Cir. 1999) ("unpaid leave supplementing regular sick and personal days might, under other facts, represent a reasonable accommodation," but leave requested here was not reasonable); *Rodgers v. Lehman*, 869 F.2d 253, 259 (4th Cir.1989) (decided under § 501 of the Rehabilitation Act); *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 782–783 (6th Cir. 1998); (medical leave of absence, paid or unpaid, may be reasonable accommodation); *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 601 (7th Cir.1998); *Brannon v. Luco Mop Co.*, 521 F.3d 843, 849 (8th Cir. 2008); *Nunes v. Wal-*

13

*Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 967 (10th Cir. 2002); *Taylor v. Rice*, 451 F.3d 898, 910 (D.C. Cir. 2006). *See also Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 185 n.5 (2d Cir. 2006) (noting that "[m]ost other circuits and the Equal Employment Opportunity Commission have concluded that, in some circumstances, an unpaid leave of absence can be a reasonable accommodation under the ADA.").

Defendant has submitted no evidence suggesting that attendance everyday at 318 Berry Ranch Road, Pearsall, Texas was a job requirement. They rely on a stereotypical statement that collapses under close analysis.

### 5. The Defendant interfered with Plaintiff's right to FMLA leave.

Defendant seeks to have it both ways. It insists Plaintiff was told about her FMLA rights. See Def's Fact Summary, p. 3, 4. Yet, the district also acknowledges that Ms. Hinojosa testified that no one told her she could request FMLA leave. Def's MSJ, p. 6. Construing the evidence in favor of the non-movant, the district failed to tell Ms. Hinojosa about her right to FMLA leave.

The FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. § 2615(a)(1). Interference with FMLA rights requires the following elements: 1) the employee was entitled to benefits under the FMLA, and 2) the employer illegitimately prevented the employee from obtaining those rights. *See, e.g., Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007). An employee need not use the words "FMLA leave" when seeking FMLA leave. It is enough that the employee put the employer on notice that she needs the leave. See *Branham v. Gannett Satellite Information Network, Inc.*, 2010 WL 3431617 (6th Cir. Sept. 2, 2010) (On November 15, 2006, at the end of one leave period, the employee asked employer "about taking leave, because [she] still wasn't feeling well and had numerous doctors' appointments scheduled for" next two months. This was sufficient notice of the potential need for extended FMLA-covered leave, and employer was not entitled to rely on single certification that employee could return to work full-duty by Nov. 14, 2006); *McFall v. BASF Corp.*, 406 F. Supp.2d 763, 768 (E.D.

Mich. 2005) ("An employee need not use any magic words, or even expressly mention FMLA, in a request for leave."). All that need be shown is that the employer is on notice that an absence is FMLA qualifying. *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995). An employee need not show the employer had the intent to interfere with FMLA leave. *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).

Ms. Hinojosa's condition was known to the Defendant. Her absences continued through the end of the 2009-2010 school year. See Ex. B, P. Hinojosa Depo, Ex. 14 (Plaintiff's own record of her absences). They had the TWC Status Reports, the last one of which released her back to work in Sept, 2009 with restrictions. Ms. Oliver admitted she knew Plaintiff was still receiving physical therapy when she issued the January 8 memo. She knew Ms. Hinojosa's absences would continue. She knew the math teacher had significant job restrictions. She knew Ms. Hinojosa received job accommodations. The Assistant Superintendent for Human Resources, Victor Vinton, testified that he believed the Plaintiff had a "serious health condition." He also knew the Plaintiff had received job accommodations.

The Fifth Circuit in *Satterfield* referred approvingly to *Brannon v. OshKosh B'Gosh, Inc.*, 897 F. Supp. 1028 (M.D. Tenn 1995). There, the employee advised that her young daughter was ill and that she might have to miss work if her condition did not improve. Under these facts, says *Satterfield*, "the employer was sufficiently aware that the plaintiff's absence *may have* qualified under the FMLA and thus was obligated to inquire as to whether the absences were excusable." *Satterfield v. Wal-Mart Stores Inc.*, 135 F.3d at 982-83 (emphasis added); *Brannon*, 897 F. Supp. at 1039. And that passage provides the key. Employees need only communicate facts sufficient to raise a possibility that the situation "may" qualify for FMLA protection. Once that standard has been met, the employee is protected; the burden of inquiry shifts to the employer. Mr. Vinton knew Ms. Hinojosa's condition was serious. Ms. Oliver knew it was serious. The employer knew her absences were excusable. Defendant does not deny discharging Plaintiff because of her absences. Defendant's MSJ states plainly, "In fact, after being

15

warned about excessive absences and her failure to follow district procedure, she continued to disregard the District's policies and procedures." Def's MSJ, p. 4. Defendant makes it plain that Plaintiff's transgression was to continue being ill. Plaintiff's alleged infraction was "excessive absenteeism not protected by federal or state law." Def's MSJ, p. 5. Indeed, Ms. Oliver's Jan. 8, 2010 memo warned Plaintiff about her excessive absences. Intent is not required, but it is obvious in this case.

Defendant refers to so-called "disruptions" when Ms. Hinojosa allegedly failed to call in timely when she was absent. But, when asked in her deposition, Ms. Oliver could recall no such instances. Ms. Hinojosa denies ever failing to notify her employer she would be out ill. She notified via email or phone. She notified the department chairman, the other teachers, the school secretary. Ex. B, P. Hinojosa Depo, p. 90-91. This is a fact question. The school administrators describe this so-called failure by Ms. Hinojosa "important" and "flagrant." Yet, neither Mr. Vinton or Ms. Oliver ever mentioned such "important" infractions in a written warning or even in Plaintiff's May, 2010 performance evaluation. Construing the evidence in favor of the non-movant, this alleged concern is not genuine. Defendant nowhere explains why two seasoned administrators failed to counsel the Plaintiff about this supposed "flagrant" violation.

## Conclusion

Ms. Oliver told Clarissa Ladner, another teacher with many absences the real reason for firing her: she had health issues. That is the real reason in Ms. Hinojosa's termination: her health issues. From the first day she met Ms. Hinojosa, Ms. Oliver was concerned about the math teacher's health ("You're the one," she said when fist meeting the Plaintiff).

WHEREFORE, Plaintiff prays that Defendant's Motion for Summary Judgment be denied, and for all relief, at law and in equity, to which she may be entitled.

Respectfully submitted,

_____
Thomas J. Crane
T.S.B. No. 05007320

LAW OFFICE OF THOMAS J. CRANE
750 E. Mulberry, Suite 303
San Antonio, Texas 78212
(210) 736-1110
(210) 745-4258 Fax
tom@cranelawyer.net

Attorney for Plaintiff

### Certificate of Service

I certify that a true copy of the foregoing instrument was served this 7th day of July, 2011 in accordance with the federal Rules of Civil Procedure on:

D. Craig Wood
Walsh, Anderson, Brown, Gallegos & Green, P.C.
100 NE Loop 410, Ste 900
San Antonio, Texas 78216

_____
Thomas J. Crane

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PATRICIA HINOJOSA | § | |
| v. | § | CIVIL ACTION NO. SA-10-CA-0993 H |
| PEARSALL INDEPENDENT SCHOOL DISTRICT | § | |

## ORDER

On this day came to be heard Defendant's Motion for Summary Judgment. Having heard argument of counsel and reviewed the motion and attachments, including deposition excerpts and records, it appears that the motion does not have merit. It appears that there is substantial difference of material facts.

It is therefore:

ORDERED that Defendant's motion be denied.

**SIGNED AND ENTERED** this ___ day of _____, 2011.

_____
UNITED STATES DISTRICT JUDGE